IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TRACI MICHELLE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 5:14-CV-01851-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, Traci Michelle Smith, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of Disability and Disability Insurance Benefits ("DIB"). Ms. Smith timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Smith was fifty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a twelfth grade education. (Tr. at 45). Her past work experiences include employment as a restaurant hostess, a cook, a janitor, and a retail store manager. (Tr. at 58). Ms. Smith claims that she became

disabled on August 20, 2009, due to multi-level disc disease, multi-level facet hypertrophy, disc herniation, significant spinal stenosis, and depression. (Tr. at 44, 128).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Smith last met the insured status requirements of the Social Security Act on December 31, 2010. (Tr. at 22). He further determined that Ms. Smith has not engaged in SGA since the alleged onset of her disability, August 20, 2009, through the date last insured, December 31, 2010. (*Id.*) According to the ALJ, Plaintiff's lumbar degenerative disc disease with multilevel facet hypertrophy and stenosis and mild convex scoliosis, multilevel thoracic, lumbar and cervical degenerative disc thinning, major depressive disorder, and pain disorder are considered "severe" based on the requirements set forth in the regulations. (Tr. at 22, Finding No. 3). However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23, Finding No. 4). The ALJ did not find Ms. Smith's allegations to be totally credible,

and he determined that she has the capacity to perform a range of light work with the following additional limitations:

> claimant can only sit in 30-minute increments for a total of 8 hours in an 8-hour workday. The claimant can stand in 30-minute increments for a total of 3 hours in an 8-hour workday. The claimant can walk for 30 minutes for a total of 2 hours in an 8-hour workday. The claimant can frequently use her bilateral upper extremities for reaching in all directions, including overhead. The claimant can occasionally use her bilateral upper extremities to push and pull. The claimant can occasionally use her bilateral lower extremities for operation of foot controls. The claimant can occasionally climb stairs and ramps, balance, and stoop, but can never climb ladders, ropes, or scaffolds or kneel, crouch, or crawl. The claimant should have no exposure to unprotected heights, vibrations, or extreme heat or cold. The claimant can occasionally tolerate exposure to moving machinery and mechanical parts. She can frequently tolerate exposure to dusts, odors, fumes, and pulmonary irritants and can frequently use a motor vehicle. The claimant can understand and remember simple instructions and tasks. She will have infrequent difficulty interacting appropriately with supervisors and coworkers. The claimant can tolerate infrequent change in the work environment.

(Tr. at 25, Finding 5.)

According to the ALJ, Ms. Smith was unable to perform any of her past relevant work through the date last insured, she was a "younger individual aged 18 to 49" on the date last insured but subsequently changed age category to "closely approaching advanced age," and she has at least a high school education, as those terms are defined in the regulations. (Tr. at 31, Findings 7 and 8). Because Plaintiff could not perform the full range of light work, the ALJ relied on testimony from a

vocational expert ("VE") to find that there are a significant number of jobs in the state and national economies that she is capable of performing, such as an information clerk, a small parts assembler, and storage facility rental clerk. (Tr. at 32.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time from August 20, 2009 through December 31, 2010." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).   This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir.

2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Smith alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ failed to properly evaluate the medical evidence of record from one-time consultative examiner Dr. Haney. (Tr. at

277-281). Second, Plaintiff contends that the ALJ did not afford proper consideration of her testimony regarding pain pursuant to the Eleventh Circuit's three-part pain standard. (Tr. at 203-205, 282).[1]

### A.     Medical Opinion Evidence from Consultative Examiner

Plaintiff contends that the ALJ improperly evaluated Dr. Haney's psychological consultative examination. (*Id.*) Dr. Haney saw the Plaintiff on January 18, 2013, for a mental examination, at the request of the Social Security Administration. (Tr. at 277-281). On examination, Dr. Haney observed Plaintiff was alert, polite, and cooperative. (Tr. at 280). She was able to subtract serial sevens and perform all simple problems in change making and arithmetic. (*Id.*) She was also able to find abstract similarities between paired objects and interpret simple proverbs. (*Id.*) She also recalled seven digits forward, four backward, and zero of three objects after five minutes. (*Id.*) Conversation was logical and goal directed. (*Id.*) Dr. Haney opined Plaintiff's ability to function in most jobs appeared

---

[1]    Plaintiff also cites case law regarding development of the record and submits that based on Dr. Haney's opinion and the records of another physician, Dr. Cosgrove, the ALJ should have found her disabled. (Pl.'s Br. at 12-14). Plaintiff does not develop any argument regarding Dr. Cosgrove's notes, nor does she identify any opinion or assessment from Dr. Cosgrove that conflicts with the ALJ's RFC finding. Any such argument is deemed waived for failure to develop it. *See Outlaw v. Barnhart*, 197 F. App'x. 825, 828 n. 3 (11th Cir. 2006) (plaintiff waived issue regarding physical exertional impairments despite listing issue in brief where plaintiff "did not elaborate on this claim or provide authority about this claim") (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n. 1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim)).

moderately impaired due to physical and emotional issues, but indicated that with treatment, she was likely to improve. (Tr. at 281).

Dr. Haney also filled out a Medical Source Statement ("MSS"), in which he opined that Plaintiff had no more than mild difficulties with understanding, remembering, and carrying out simple instructions but would have moderate to marked difficulties with complex instructions. (Tr. at 277). Dr. Haney also noted that Plaintiff had no difficulties interacting with the public and no more than mild difficulties interacting with supervisors and co-workers. (Tr. at 278). However, he opined Plaintiff had marked difficulty responding appropriately to usual work situations and changes in a routine work setting. (Tr. at 278).

The ALJ gave Dr. Haney's opinion great weight. (Tr. at 29). For the following reasons, the ALJ's treatment of Dr. Haney's opinion is supported by substantial evidence.

The ALJ weighs non-controlling medical opinions, such as the opinion of Dr. Haney, in light of: (1) the length and frequency of the treatment or examination, (2) the nature and extent of the relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the source.  *See* 20 C.F.R. § 416.927(c).

Plaintiff first contends that the ALJ did not comply with Eleventh Circuit precedent in giving great weight to Dr. Haney's opinion. However, the ALJ explained that Dr. Haney's conclusion that Plaintiff was no more than "moderately" impaired due to physical and emotional limitations was supported and explained by his notes and was consistent with the mental health evidence of record. (Tr. at 29-30, 281). While the ALJ did not adopt Dr. Haney's precise language in identifying Plaintiff's limitations, (tr. at 277-78), the ALJ's limitations—simple work, no more than frequent interaction with co-workers and supervisors, and a work environment where changes in routine are infrequent—adequately accounted for Dr. Haney's limitations. (Tr. at 25, Finding No. 5). This was all the ALJ was required to do under the appropriate regulations and precedent. *See* 20 C.F.R. § 404.1527(b) (providing in determining whether a claimant is disabled, the Commissioner will consider the opinions in the case record); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (holding an ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so).

Indeed, the ALJ's mental RFC finding is consistent with Dr. Haney's opinion that Plaintiff's ability to function at most jobs was no more than moderately impaired due to physical or emotional limitations. (Tr. at 281). For instance, the

ALJ limited Plaintiff to simple instructions and tasks, which takes into account Dr. Haney's notation that Plaintiff would have moderate to marked difficulties with more complex tasks. (Tr. at 25, Finding No. 5; Tr. 277). The ALJ's conclusion that Plaintiff would have infrequent difficulty interacting appropriately with supervisors and coworkers, also takes into account any mild difficulties Dr. Haney noted in that area. (Tr. at 25, Finding No. 5; Tr. 278). Notably, per the form's definitions, even with mild difficulties, the individual can "generally function well." (Tr. at 277). Finally, the ALJ's limitation to "infrequent" changes in the work environment adequately takes into account Dr. Haney's notation that Plaintiff would have marked difficulties responding to usual work situations and changes in a routine setting. (Tr. at 25, Finding No. 5; Tr. 278). For instance, the ALJ's limitation to "infrequent" changes in work environment takes Plaintiff away from usual work situations and most changes in routine where Plaintiff might have difficulties. (Tr. at 277). Notably, Dr. Haney did not opine Plaintiff would have significant difficulties in an environment where changes are infrequent. (Tr. at 277-78).

Plaintiff submits that a person who has marked difficulties with usual work situations and changes in a routine work setting is, "by definition," disabled, but she cites no authority for this proposition. (Pl.'s Br. at 8). The ALJ asked the VE whether a hypothetical claimant with Plaintiff's mental RFC including "infrequent

change" in the work environment could perform work in the national economy. (Tr. at 60-61). The VE testified that the hypothetical claimant could perform work as a clerk, a small parts assembler, and a storage facility rental clerk. (Tr. at 60-61). As noted, the Commissioner can show there is other work in the national economy a claimant can perform by using VE testimony in response to a hypothetical question that encompasses the claimant's impairments. *See Wilson*, 284 F.3d at 1227; *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). As the ALJ's RFC finding adequately took into account Dr. Haney's limitations, and a VE identified jobs Plaintiff could perform with the ALJ's RFC, the ALJ properly found Plaintiff could perform other work in the national economy. (Tr. at 31-32, Finding No. 10; Tr. at 59-61).

### B. Allegations of Pain

Plaintiff also asserts that the ALJ's evaluation of her subjective complaints of pain was improper and that he did not properly apply the Eleventh Circuit's pain standard. Subjective complaints of pain and other symptoms may establish the presence of a disabling impairment if they are supported by medical evidence. *See Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical

evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 1991) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). Nonetheless, the ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). In making a credibility determination, an ALJ may consider the opinions of treating physicians and consultative examiners, as well as those of other medical doctors. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The credibility determination does not need to refer to "every piece of evidence in his decision [regarding credibility], so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210-1211.

In this case, although the ALJ found that Ms. Smith's impairments could be expected to cause the alleged symptoms, he did not believe that her statements regarding the limiting effects of this pain were credible. (Tr. at 29). Substantial evidence supports the ALJ's credibility determination.

First, the ALJ noted that there was little evidence to support the alleged consistency and severity of back pain. (Tr. at 26-27). Ms. Smith and doctors had reported that her back pain improved with treatment. (Tr. at 25-26). This is contrary to the debilitating pain described by Ms. Smith. (Tr. at 51). For instance, in August 2009, the same month as her onset date, she reported to her chiropractor that her back pain was not constant and only happened a few times a year. (Tr. at 198). Although she reported to physician Michael Cosgrove, M.D., later that month, that it had worsened, she stated at a follow up two weeks later that her symptoms had greatly improved with the aid of medication. (Tr. at 26, 203-205). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (the ALJ may consider effectiveness of any medication used to alleviate the alleged pain or symptoms). Plaintiff chose to opt for conservative treatment over surgery or injections. (Tr. at 26, 205). *See* 20 C.F.R. § 404.1529(c)(3)(vi) (providing ALJ may consider measures a claimant takes to relieve pain or symptoms); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir.

1996) (affirming ALJ's adverse credibility finding where ALJ reasoned, in part, that Plaintiff's treatment was conservative in nature).

Following the 2009 appointments, there was no further treatment for back pain until 2011, after Plaintiff's date of last insured. (Tr. at 26; *see generally* Tr. at 198-283). In 2011, she reported to her doctor that her pain was no worse than before and that a combination of two medications seemed to help. (Tr. at 26, 208). The ALJ did consider her claim that she could no longer afford treatment because she had no health insurance in 2011, but the ALJ also considered that she was able to finance her smoking habit of half a pack a day. (Tr. at 193, 26). Therefore, the ALJ did not find this claim to hold much merit. (Tr. at 27). The ALJ also noted there was little evidence of emergency room or hospital visits for back pain, and there was little evidence Plaintiff attempted treatment at a health department or free clinic. (Tr. at 26-27). Thus, the ALJ found that the gaps in Plaintiff's treatment, among the other factors identified herein, undermined her credibility. (Tr. at 27).

Secondly, there were inconsistencies in Plaintiff's testimony. (Tr. at 28-29). *See* 20 C.F.R. § 404.1529(c)(4)(noting that in evaluating a claimant's subjective statements, consideration is also given to any conflicts between the claimant's statements and the rest of the evidence). For example, her reports to Dr. Marlin D.

Gill, a consultative examiner, in January 2013 stated that she could clean, vacuum, sweep, mop, drive, shop, and care for herself and her grandchildren. (Tr. at 27, 269). She also told him that she could stand for 30 minutes, sit for 30 minutes, and walk for 30 minutes. (Tr. at 28, 48.) She never mentioned using an assistive device to Dr. Gill, and he did not observe any swelling or back spasms at her examination. (Tr. at 28-29, 49, 51-52, 54, 269-70). However, she testified less than a month later that she could only stand for 15 minutes, that she could only walk and sit for 10 or 15 minutes, that she used a walker at home on uneven ground, and that she uses ice packs daily and elevates her leg daily for swelling. (Tr. at 28, 48, 160, 176, 269, 272). She also testified about being unable to walk for several days after painting her living room in November 2012, but she similarly did not mention this to Dr. Gill less than one month prior. (Tr. at 29, 54, 269.) Finally, she told Dr. Gill that she declined to have surgery because she lost her insurance, but she also stated that she declined it because she felt better with conservative treatment. (Tr. at 27, 205, 269.)

The ALJ also considered that the physical examination findings and opinion of consultative examiner Dr. Gill failed to support Plaintiff's claims of disabling pain. (Tr. at 27, 29). *See* 20 C.F.R. § 404.1529(c)(2) (the ALJ can consider the objective medical evidence among other factors when evaluating subjective

complaints). Dr. Gill examined Plaintiff in January 2013. Dr. Gill observed Plaintiff could get on and off the examination table with no assistance. (Tr. at 27, 270). Her back was normal with no tenderness, although she had some decreased range of motion. (Tr. at 27, 270). Plaintiff could lift her right leg with no difficulty and had full 5/5 strength, but complained of back pain when lifting her left leg and had 4/5 strength. (Tr. at 27, 270). Dr. Gill also observed Plaintiff could squat halfway and come back up again and was able to walk on her tiptoes and heels. (Tr. at 27, 270). Dr. Gill identified physical limitations consistent with the ALJ's RFC finding. (*Compare* Tr. 25, Finding No. 5, *with* Tr. 271-75). The ALJ gave Dr. Gill's opinion great weight. (Tr. at 29). "[A] written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and . . . may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant." *See Richardson v. Perales*, 402 U.S. 389, 390, 402 (1971).

Finally, Plaintiff's reported activities of daily living support the ALJ's conclusion that Plaintiff did not suffer from disabling limitations. (Tr. at 25-32). *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (the ALJ may consider a claimant's daily activities when evaluating his subjective complaints and determining the issue of RFC). In January 2013, Plaintiff reported

to Dr. Gill that she cleaned, dusted, vacuumed, swept, mopped, cooked, washed dishes, folded and ironed clothes, and made the bed. (Tr. at 27, 269). Plaintiff also stated she drove, shopped at the grocery store, and could take care of her own personal needs. (Tr. at 27, 269). In pre-hearing function reports, both Plaintiff and her husband indicated she could care for her grandchildren and two small dogs, cook light meals, and do light housekeeping. (Tr. at 28, 155-57, 171-73). They further indicated she watched television, sewed, and read. (Tr. at 28, 159, 175). Plaintiff's husband also stated that she sometimes visited family and neighbors. (Tr. at 28, 155, 159). Plaintiff's ability to drive was consistent with her ability to perform sequential postural movements to enter and exit a vehicle, sit, use her hands, and operate some hand and foot controls. The household chores and grocery shopping also required her to do some standing, lifting, and bending.

In sum, the ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for partially rejecting her testimony. *See* 20 C.F.R. §404. 1529(c)(2)-(4); (Tr. at 25-29). As the foregoing demonstrates, substantial evidence supports the ALJ's decision to discredit the Plaintiff's complaints of pain.

**IV.   Conclusion**

Upon review of the administrative record, and considering all of Ms. Smith's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 9, 2016.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704